# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| **DENISE A. NOVAK,** | : |
| **Plaintiff,** | : |
| **v.** | : |
| **OCWEN FEDERAL BANK FSB,** | : |
| **Defendant.** | : |

```
FILED: MAY 02, 2008
08CV2528        TC
JUDGE LEINENWEBER
MAGISTRATE JUDGE KEYS
```

CIVIL ACTION
FILE NO.

## NOTICE OF REMOVAL

**TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

### <u>NOTICE OF REMOVAL</u>

Defendant, Ocwen Loan Servicing, LLC, successor in interest to Ocwen Federal Bank

FSB, improperly named as Ocwen Federal Bank FSB (hereinafter referred to as "Ocwen"), in its'

Corporate capacity respectfully notifies the Court pursuant to 28 U.S.C. § 1441 that it has this

day removed this action from the Circuit Court of Cook County, County Department, Law

Division, State of Illinois to this Court.  In support of this removal, Defendant Ocwen submits

this notice.  Removal is based on grounds of diversity jurisdiction as the amount in controversy

exceeds $75,000, and diversity exists as between Plaintiff and Defendant Ocwen.  As there is

complete diversity between the parties, all the requirements of diversity jurisdiction are satisfied.

## BACKGROUND

1.     This action was originally filed in the Circuit Court of Cook County, County Department, Law Division, State of Illinois on March 24, 2008.  A copy of the Complaint filed in the state court is attached hereto as Exhibit 1.

2.     Ocwen was served with the Summons and Complaint on April 2, 2008.  Therefore, this removal is timely because it has been filed within 30 days of service as required by 28 U.S.C. § 1446(b).

3.     This action is removable to federal court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is diversity of citizenship between Plaintiff and Defendant Ocwen.

4.     Supplemental jurisdiction exists with respect to any remaining claims pursuant to 28 U.S.C. § 1367.

5.     There is a pending foreclosure action in Illinois state court, Case Number 2004-CH-06262, Circuit Court of Cook County, Illinois, which Ocwen may move to consolidate with the present action.

## DIVERSITY JURISDICTION

6.     There is diversity of citizenship among the parties.  Plaintiff Denise A. Novak is an individual residing in the County of Cook, State of Illinois. (*See* Exhibit 1 at ¶1.)

7.     Ocwen is a citizen of Florida.  As of June 30, 2005, Ocwen Federal Bank FSB voluntarily dissolved, and its mortgage servicing business was transferred to Ocwen Loan Servicing, LLC. The sole member of Ocwen Loan Servicing, LLC is Ocwen Financial Corporation, which is a citizen of Florida.

8.    Diversity jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is diversity of citizenship as between Plaintiff and Defendant Ocwen.

9.    The amount in controversy easily exceeds $75,000 because Plaintiff filed a Complaint seeking damages relating to the improper servicing of Plaintiff's loan, which currently amounts to $530,884.63, and which Defendant is currently seeking to foreclose on. Therefore, since Defendant Ocwen is in jeopardy of not being able to foreclose on its $530,884.63 lien the amount in controversy requirement is indisputably satisfied for federal removal.

10.    Furthermore, "courts must focus their analysis on the plaintiff's own evaluation of its case and need only find that the plaintiff made a good faith claim in excess of $75,000.00 in order to create federal jurisdiction." *Fulcrum Financial Advisors, Ltd. v. BCI Aircraft Leasing, Inc.*, 354 F.Supp.2d 817, 824 (2005). Therefore, since Plaintiff has claimed damages *in excess* of $50,000.00 in addition to costs and attorneys fees, the amount of controversy requirement is satisfied for federal removal.

## VENUE

11.    Venue for removal is proper in this district under 28 U.S.C. § 1441(a) because this district embraces the Circuit Court of Cook County, Illinois, the forum in which the removed action was pending.

## NOTICE

12.    Concurrently with the filing of this Notice, Defendant Ocwen has filed a copy of this Notice of Removal with the Clerk of the Circuit Court of Cook County, County Department, Law Division, State of Illinois.

13.    The contents of Exhibit 2 constitute the entire file of the action in the Circuit Court of Cook County, County Department, Law Division, State of Illinois. (*See* Exhibit 2.)

14.     Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal is being filed with the Circuit Court of Cook County, County Department, Law Division, State of Illinois.

15.     Petitioners reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, Petitioner, Ocwen Loan Servicing, LLC, successor in interest to Ocwen Federal Bank FSB, improperly named as Ocwen Federal Bank FSB, in its Corporate capacity, hereby removes the action now pending against it in the Circuit Court of Cook County, County Department, Law Division, State of Illinois, at Docket No. 2008L003215, to this Court.

Respectfully submitted,

Dated:  May 2, 2008                              By: s/ Amy A. Kalarickal
                                                     One of its Attorneys

Potestivo & Associates, P.C.
Amy A. Kalarickal (ARDC #: 6291675)
134 North LaSalle Street, Suite 2050
Chicago, Illinois 60602
Telephone: (312) 263-0003 ext. 100
Main Fax: (312) 263-0002
Email: akalarickal@potestivolaw.com
Attorneys for Ocwen

## CERTIFICATE OF SERVICE

I, Amy A. Kalarickal, do hereby certify that I served a true and correct copy of the foregoing, Notice of Removal, on the following parties or their attorneys:

Wayne Rhine, Esq.
Friedman & Wexler, LLC
Attorneys for Plaintiff
500 W Madison St., Suite 2910
Chicago, Illinois 60661

on May 2, 2008 by enclosing a copy of the same in a well sealed envelope, by first class mail, with proper postage pre-paid and depositing the same in a United States Mail receptacle in the City of Chicago, State of Illinois by 5:00 p.m.

By: s/ Amy A. Kalarickal
One of its Attorneys

Potestivo & Associates, P.C.
Amy A. Kalarickal (ARDC #: 6291675)
134 N. LaSalle St., Suite 2050
Chicago, IL 60602
Telephone: (312) 263-0003
Fax: (312) 263-0002
Email: akalarickal@potestivolaw.com
Attorneys for Ocwen

08CV2528          TC
JUDGE LEINENWEBER
MAGISTRATE JUDGE KEYS

# EXHIBIT 1

STATE OF ILLINOIS      )
                              )
COUNTY OF COOK      )

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

DENISE A NOVAK                )
                              )
               Plaintiff       )
                              )
Vs.                               )      No.
                              )
OCWEN FEDERAL BANK FSB    )
                              )
            Defendant      )

## COMPLAINT

Now comes the Plaintiff, DENISE A NOVAK, by her attorneys, FRIEDMAN & WEXLER LLC by Wayne Rhine and complains of the defendant, OCWEN FEDERAL BANK FSB as follows:

## PARTIES

1)      The Plaintiff, DENISE A NOVAK is a resident of the County of Cook and is the owner as tenants by the entirety of a certain property described as:

Lots 37 and 38 in County Clerk's Division of that part of the Southeast ¼ of Section 17, Township 42 North, Range 13, East of the Third Principal Meridian lying West of the Chicago and Northwestern Railroad in Cook County, Illinois commonly known as 950 Westmoor Road, Winnetka, Illinois 60093. Permanent Index No. 05-17-412-004.

2.

2) That OCWEN FEDERAL BANK FSB is a federal savings bank chartered and regulated by the Office of Thrift Supervision pursuant to the Home Owners Loan Act, and it is licensed to and does transact business in the State of Illinois, County of Cook.

3) That venue and jurisdiction is proper in the State of Illinois, County of Cook as all events complained of herein occurred in Cook County.

## ACTS COMMON TO THIS COMPLAINT

1) That on or about, October 8th, 2002, the parties hereto entered into a mortgage for the aforesaid property in the amount of $450,000.00 and said mortgage was recorded in the Cook County Recorder of Deeds Office on December 9th, 2002, as document #00213524289, said mortgage being with Fidelity Mortgage Inc but serviced by the Defendant, OCWEN FEDERAL BANK FSB.

2) That there existed in the State of Illinois a statute entitled High Risk Home Loan Act (815 ILCS 137/7).

3) That at all times complained of herein there existed in the State of Illinois a statute entitled Deceptive Practices, Consumer Fraud and Deceptive Practices Act 815 ILCS 505 et.seq.

## LIABILITY

1) That due to circumstances beyond the control of the Plaintiff, the Plaintiff fell behind in mortgage payments in 2003.

3.

2)      That the Plaintiff was able to gather the sums necessary to bring the mortgage current.

3)      That upon contacting the Defendant concerning bringing the mortgage current, the Plaintiff was advised that the Defendant would not accept the payment unless a foreclosure agreement was executed, thus, violating Plaintiff's right to bring the mortgage current.

4)      That in December of 2005, the Plaintiff fell behind in her mortgage payments.

5)      The Plaintiff paid approximately $12,000.00 but the Defendant OCWEN FEDERAL BANK FSB refused the payment unless the Plaintiff signed another forbearance agreement, again, violating Plaintiff's rights to bring the mortgage current.

6)      Despite the efforts of the Plaintiff to bring her mortgage current, a mortgage foreclosure action was filed against the Plaintiff in case #04CH 6262 by the alleged assignees of the Defendant.

7)      That in June of 2006, the Plaintiff sent OCWEN FEDERAL BANK FSB two checks to cover the mortgage payments. One check was in the amount of $8,100.00. The Defendant admitted receiving one check but not the other. The Defendant insisted on receiving a replacement check for $1,000.00, even though the Plaintiff faxed the Defendant 2 or 3 times, a copy of the cancelled check for $1,000.00.

4.

8)     That the Defendant notified the Plaintiff not to send any more payments until the issue of the $1,000.00 check was resolved.

9)     That it took the Defendant more than 5 months to resolve this issue.  As a result a higher rate of interest was applied to the mortgage.

10)     That the Defendant has charged the Plaintiff for inspection fees, even though, no inspection was ever made of the property.

11)     That although most payments were made by the Plaintiff in a timely manner, the Defendant would often post the payments as being late resulting in late fees being charged to the Plaintiff.

12)     That considering the Plaintiff's assets and earning capacity, this loan should not have been made.

13)     That as a direct and proximate conduct of the Defendant as set forth above the credit scores of the Plaintiff has been greatly reduced with the result that the Plaintiff has been unable to obtain other credit or to refinance this mortgage.

14)     That the conduct of the Defendant taken in its entirety constitutes deceptive business practices in violation of the Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505 et.al.

**WHEREFORE**, Plaintiff prays for damages against the Defendant, OCWEN FEDERAL BANK FSB in the sum in excess of Fifty Thousand Dollars, ($50,000.00) plus costs and reasonable attorneys' fees.

DENISE A NOVAK

5.

Now comes Denise A Novak pursuant to Chapter 735 Section 5/1-109 of the

Illinois Revised Statue and states that she has read the above and foregoing

complaint her subscribed and that the same is true in substance and in fact.

_____
DENISE A NOVAK

_____
WAYNE RHINE, ESQ.

**FRIEDMAN & WEXLER LLC**
**BY: WAYNE RHINE, ESQ.**
**ATTORNEYS FOR PLAINTIFF**
**500 W MADISON ST., SUITE 2910**
**CHICAGO, IL. 60661**
**312-474-1000**
**ATTORNEY NO. 91761**

0021352428
9781/0042 46 006 Page 1 of 15
2002-12-04 14:05:58
Cook County Recorder    52.50

0021352428

World Title Guaranty, Inc.
880 N. York Road
Elmhurst, IL 60126
WORLD TITLE# 025809619 <sup>4</sup>

Prepared By And
Mail To:
FIDELITY MORTGAGE, INC.
1000 WOODBURY RD. #200
WOODBURY, NY 11797

———————— Space Above This Line for Recording Information ————————

# MORTGAGE

Loan Number: 0101742419          MIN Number: 1000766C0012315176
App Number: 020812C728

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Security Instrument." This Mortgage, which is dated    October 8, 2002          will be called the
"Security Agreement."
(B) "Borrower(s)."   DAVID B. NOVAK and DENISE A. NOVAK, HUSBAND AND WIFE
                                                                                    sometimes
residing at    950 WESTMOOR RD, WINNETKA, IL 60093
will be called Borrower, and sometimes simply "I" or "me."                             will be called "Lender."
(C) "Lender."  FIDELITY MORTGAGE INC.
Lender is a corporation  which exists under the laws of the STATE OF  Delaware
Lender's address is   8044 MONTGOMERY ROAD, SUITE 469, Cincinnati, OH  45236

(D) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as
a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(E) "Note." The Note signed by Borrower and dated    October 8, 2002     will be called the "Note."
The Note shows that I owe Lender ($       450,000.00      ) plus interest. I have promised to pay this debt
in monthly payments and to pay the debt in full by    November 1, 2032
(F) "Property." The property that is described below in the section titled "Description of the Property" will be called
the Property, which is located in    COOK                         COUNTY, ILLINOIS.
(G) "Sums secured," the amounts described below in the section titled Borrower's Transfer to Lender of Rights in the
Property sometimes will be called the "sums secured."
**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property described below to Lender, subject to the terms of this Security Instrument.
For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and
Lender assigns) and to the successors and assigns of MERS those rights that are stated in this Security Instrument, and
also those rights that the law gives to lenders who hold mortgages on real property. Borrower understands and agrees

14 PgaR2

Doc #20133 - 811A71

that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note, with interest, and all renewals, extensions and modifications to the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument, and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (J) below, particularly:

(A) Commonly known as: 950 WESTMOOR ROAD, WINNETKA, IL  60093
Address #2:
Address #3:
(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A)  of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"
(D) All rents or royalties from the Property described in subparagraph (A) of this section;
(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;
(F) All rights that I have in the land which lies in the streets or roads in front of or next to, the Property described in subparagraph (A) and (B) of this subparagraph (A) of this section;
(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section; along with but not limited to stoves, refrigerators, washers, dryers, dishwashers, ovens, air conditioning units;
(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future;
(I) All replacements of, or additions to, the Property described in subparagraphs (B) through (H) of this section; and
(J) All of the amounts that I pay to Lender under Paragraph 2 below.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security agreements all over the country.  It contains non uniform promises and agreements that vary to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

**0021352428** Page 1 of 15

I promise and I agree with Lender as follows.

## 1. BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, principal and interest due under the Note and any prepayment and late charges due under the Note.

## 2. MONTHLY PAYMENTS FOR TAXES & INSURANCE

### A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the property and mortgage insurance (if any). I will pay those amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

Each of my payments under this Paragraph 2 will be the sum of the following:
(i) One twelfth of the estimated yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument; plus
(ii) One twelfth of the estimated yearly leasehold payments or ground rents on the Property, if any; plus
(iii) One twelfth of the estimated yearly premium for hazard insurance covering the Property (if any); plus
(iv) One twelfth of the estimated yearly premium for mortgage insurance (if any); plus
(v) One twelfth of the estimated yearly premium for flood insurance (if any).

In accordance with applicable law, Lender will estimate from time to time my yearly taxes, assessments, leasehold payments or ground rents and insurance premiums. Lender will use existing assessments and bills and reasonable estimates of future assessments and bills. Lender may, at any time, collect and hold items under Paragraph 2 in an aggregate amount not to exceed the maximum amount that may be required for Borrower's account under the Real Estate Settlement Procedures Act of 1974, 12 USC 2601 et seq., and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time. ("RESPA"), except that I will pay to Lender an additional sum equal to one sixth of the aggregate amount of yearly payments under this paragraph 2 or a lesser amount if required by applicable law. This sum is known as the "reserve" or "cushion," and is permitted by RESPA for unanticipated disbursements or disbursements before my payments are available in the account. These amounts that I pay to Lender for these items under Paragraph 2 will be called the "Funds." These Funds may be commingled with the funds of the Lender unless the law requires otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender may require Borrower to pay a one time charge for an independent real estate tax reporting service used by Lender in connection with the loan, unless applicable law provides otherwise.

### B) Lender's Obligations

Lender will use the Funds to pay the above listed items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

### C) Adjustments

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Security Instrument, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of funds. There will be excess amounts if, at any time, the sum of (i) the amount of funds which Lender is holding or keeping, plus (ii) the amount of the monthly payments of funds which I still must pay between that time and the due dates of these items is greater than the amount necessary to pay the above listed items when they are due. If the Funds exceed the amounts permitted to be held by RESPA, Lender shall deal with excess funds as required by RESPA.

If, when payments of these items are due, Lender has not received enough Funds to make those payments, I will pay to Lender whatever additional amount is necessary to pay the these items in full. I must pay that additional amount in one or more payments as Lender may require, and permitted by RESPA

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note;
Next, to pay late charges under the Note;
Next, to pay any amounts due to Lender under Paragraph 2 above or other advances;
Next to pay interest due; and
Last to pay principal due.

## 4. BORROWERS'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, charges, fines and impositions attributable to the Property and that may be superior to this Security Agreement. I will also make payments due under any lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to time to the person owed them (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments, I will give Lender a receipt which shows that I have done so. If I make payments to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if:

(A) I agree, in writing to pay the obligation which gave rise to the superior lien, and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that during the lawsuit the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement approved in writing by Lender that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days from the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE

I will obtain hazard insurance to cover all buildings and other improvements that are now, or in the future, will be located on the Property. The insurance must cover loss or damage caused by fire hazards normally covered by "extended coverage" hazard insurance policies, and other hazards, including floods or flooding, for which lender or state or federal government requires coverage. The insurance must be in the amounts and for the periods of time, required by Lender or government agency. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain coverage as described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in accordance with this paragraph and paragraph 7. If the property is determined to be located in a flood zone that requires flood insurance, as designated by the Federal Emergency Management Agency or another agency that has the authority to make such determination, I understand that I will be required to obtain flood insurance coverage for the property.

All of the insurance policies and renewals of those policies must include what is known as a "Standard Mortgagee" clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

**0021352428** PKg 5 of 16

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so. The amount paid by the Insurance company is called "proceeds." I authorize the Lender to settle any claims and collect the proceeds on my behalf and use them to reduce the amount I owe to Lender under the Note and under this Security Instrument (whether or not repairs have been made by me), or Lender may release the proceeds to me for use in the repair or restoration of the damaged Property. Lender may use the proceeds to repair or restore the property or to pay the sums secured.

If any proceeds are used to replace the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 25 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the sums secured immediately before the Property is acquired by Lender or sold.

In the event that Borrower fails to maintain hazard insurance or flood insurance as outlined in this Paragraph 5, or has the policy cancelled, then and in that event, Lender may obtain the necessary insurance.   Lender may charge borrower a "surcharge" to cover the costs and administration of said insurance, and will be responsible for the payment of these fees and all premiums on said insurance. If the Lender obtains insurance, it will only provide protection for the premises. Contents, liability and other items will not be insured.

Borrower irrevocably assigns to lender all of my right, title and interest in any tax/insurance escrow refunds, insurance proceeds or the like regardless of how designated, which is/are in any way related to the subject property, and authorizes these amounts to be paid directly to Lender. Lender will credit all payments to the borrower(s) account in the order of priority, as specified in paragraph 3 hereof.

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**
I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the property, I will fulfill my obligations under any lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY: MORTGAGE INSURANCE**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights under the Note or in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Note and Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amount with Interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above.

**8. LENDER'S RIGHT TO INSPECT THE PROPERTY**
Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times.

**9. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the property and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the sums secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the sums secured immediately before the taking divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the sums secured. The 30 day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe the Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A) Borrower's Obligations**
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument. Lender may allow these delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling the obligation of the Note or the Security Instrument.

**(B) Lender's Rights**
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Extension of time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy, pays taxes, or pays other claims, preclude the exercise of any right or remedy. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 19 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and this Security Instrument.

**11. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Any person who takes over my right or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may

be required to pay all sums secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument, and (B) that person is not personally obligated to pay the sums secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 12. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all sums secured by this Security Instrument as that phrase is defined in Paragraph 19 below. If Lender requires immediate payment in full under this Paragraph 13, Lender will take the steps and may act as specified in Paragraph 19 below.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a written notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document.". A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by Federal law and the laws of the jurisdiction where the property is located.

The borrower hereby consents and agrees that the debt hereby secured, or any part thereof, may be renewed or extended beyond maturity as often as may be desired by agreement between the creditor and any subsequent owner of the property, and no such renewal or extension shall in any way affect the borrower's responsibility, whether as surety or otherwise. The borrower and any other party assuming liability hereunder hereby consent and agree that if the property conveyed hereby or a substantial portion thereof is transferred to any subsequent owner, and the creditor exercises the right to accelerate the debts secured hereby, the creditor may accept any delinquent payments or other cure of default giving rise to such acceleration from the then owner of the property or any other person and reinstate the indebtedness in accordance with the schedule of maturity as of the time of acceleration or upon such new schedule as may be agreed if renewal or extension are otherwise permitted and no such reinstatement shall in any way affect the liability of such prior parties, whether as surety or otherwise.

If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflicts with the law can be separated from the remaining terms, and the remaining terms will still be enforced. The borrower hereby waives its right to a jury trial.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument and hereby acknowledge receipt thereof.

0021352428 Page 8 of 16

## 17. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (A) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property; (B) the creation of a purchase money security interest for household appliances; (C) a transfer by devise, descent or by operation of law upon the death of a joint tenant; or (D) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with Paragraph 16 hereof. Lender may, without further notice or demand on Borrower, invoke any remedies permitted by this Security Instrument.

Lender may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender. To the extent permitted by applicable laws, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrowers will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

## 18. BORROWER'S WARRANTIES REGARDING FORFEITURE

Borrower states that he will not use, and will not permit any third party to use the Property or any portion thereof or any interest therein for any purpose that would cause the property to be subject to forfeiture. Borrower further states that the Property has not been acquired with the proceeds from any transaction or activity that would thereby cause the property to be subject to forfeiture.

## 19. LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL

If I fail to keep any promises or agreements made in the Note or in this Security Instrument, including the promises to pay when due the amounts I owe to Lender, I will be in default. If this occurs, the Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment in Full." If I am in default for any reason, you have the right to demand payment of the entire amount I owe you. If Lender requires payment in full or in the event of a foreclosure action, I agree to pay reasonable and permissible legal fees, costs and disbursements, and that such total amount shall be paid by me with interest, as specified in paragraph 25, up to the day you actually receive such payment, even after foreclosure occurs.

In any lawsuit for sale, Lender will have the right to (i) collect all costs allowed by law; (ii) have the Property sold as one parcel; and (iii) have a Receiver appointed by the Court without first giving notice to me and without regard to the value of the Property.

Upon acceleration, Borrower shall have no right to reinstate. All rights and remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively.

**0021352428** Page 7 of 15

## 20. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires Immediate Payment in Full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may; (A) collect the rental payments, including overdue rental payments. directly from the tenants: (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. If Lender notifies the tenants, Lender has the right to collect rental payments to Lender without having to ask whether I failed to keep any promises and agreements under this Security Instrument. If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and/or managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. The costs of managing the Property may include the receiver's fees, reasonable attorney's fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

If I fail to make any payments or keep promises under this Security Instrument or the Note, then I shall pay monthly in advance to you or to any receiver a fair charge for the use of the Property that I occupy. If I do not pay this fair charge, you or the receiver may sue to collect it or to remove me, or both. I will not collect more than one (1) month's rent in advance from any tenant or occupant without your written consent.

## 21. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument the Lender will release this Security Instrument and deliver a certificate stating this Security Instrument has been paid in full. Lender will then deliver a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the Release in the proper official records.

## 22. ADDITIONAL CHARGES

I agree to pay all reasonable charges in connection with the servicing of this loan, including but not limited to obtaining tax searches and bills and in processing insurance loss payments, ownership transfers, releases, easements, consents, extensions, modifications, special agreements, assignments, reduction certificates, asset recovery and satisfaction of mortgage.

In the event Borrower directs Lender to order any reports, appraisals, searches, examinations and/or the like, I agree that the expense for the same is to be added to the balance of the existing mortgage, if same is not paid within 30 days of written notification.

## 23. HAZARDOUS SUBSTANCES

Borrower shall not create or suffer to exist, or permit any of its agents, employees, contractors, tenants, or invitees to create or suffer to exist any lien, security interest charge or encumbrance against the Property or any portion thereof, relating to any physical or environmental condition, including, but not limited to, any lien imposed pursuant to section 107(f) of the Superfund Amendments and Reauthorization Act of 1986 (42 U.S.C. 9607(l)) or any similar federal, state, or local statute, regulation, rule, order, or ordinance.

Borrower shall not cause or permit any other party to cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any environmental law.

0021352428 Page 10 of 16

Borrower shall promptly give the Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or environmental law, of which the Borrower has actual knowledge or should have actual knowledge. If Borrower learns or is notified by any governmental or regulatory authority that any removal or remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take necessary remedial, removal, and other actions necessary to clean up and remove all Hazardous Substances, solid wastes, or contaminants on, in, from, or affecting the property or any portion thereof, in accordance with environmental law, to the satisfaction of the lender and in accordance with all orders and directives of governmental authorities having jurisdiction over the Property and/or such substances or materials. If Borrower fails to take remedial action, and upon receipt of notice from any party asserting the existence of any Hazardous Substances affecting the property that if true may result in an order, suit, imposition of a lien on the property, or other action, or if the lender in good faith believes would jeopardize its security interest, the Lender at its option shall take whatever action is necessary in accordance with environmental law, to clean up, remove, resolve or otherwise remediate the situation. All reasonable costs and expenses paid or incurred by Lender in the exercise of such rights shall be secured by the liens securing this loan and shall be payable by borrower upon demand by Lender.

Borrower shall indemnify, exonerate, defend and hold harmless Lender, its officers, directors, shareholders, agents, and employees, from and against any and all claims, demands, obligations, penalties, fines, suits, liabilities, settlements, damages, losses, costs, and expenses (including but not limited to, attorney and consultant fees and expenses, investigation fees, laboratory expenses, cleanup costs, court costs, and other expenses of litigation or arbitration), as well as any such fees and expenses incurred in enforcing this indemnity, and any violation of any applicable environmental laws in effect on or before the date hereof or hereafter made effective.

As used in this document, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law, and the following substances: gasoline, kerosene, other flammable or toxic petroleum products or by products, toxic pesticides, herbicides and fungicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.

As used in this document, "Environmental Law" means federal, state, and local laws, statutes, rules, regulations, judicial orders and decisions that relate to health, safety or environmental protection and maintenance in the jurisdiction where the property is located.

**24. MISCELLANEOUS PROVISIONS**

(A) In the event that the holder of this Security Instrument be required to retain legal counsel for the purpose of commencing foreclosure proceedings hereunder, a reasonable sum shall be added to the said indebtedness, as fair and reasonable legal fees and deemed secured hereby in addition to expenses, costs, allowances as provided by law.

(B) If this Security Instrument involves a condominium unit, any failure to pay common charges when they become due shall be considered a default under the terms of this Security Instrument.

(C) In the event that Borrower is permitted to cure a default of the Note and/or Mortgage pursuant to the United States Bankruptcy Code (Title 11 U.S.C.) or other applicable law, the parties hereto specifically agree that the amount necessary to cure the default shall include the sum of all amounts past due under the terms of the Note and/or Mortgage, including all principal, interest, and late charges, and all amounts advanced by Lender pursuant to the terms of the Note and/or Mortgage, including all attorneys fees and costs, plus interest on such sum calculated at the annual interest required by the Note and/or Mortgage from the date on which Borrower elects to cure the default to the date on which the default is cured. Nothing herein shall be construed to allow Borrower the right to cure any default of the Note and/or Mortgage except as specifically authorized under the United States Bankruptcy Code (Title 11 U.S.C.) or other applicable law.

(D) In the event that Lender shall advance any money in order to pay Borrower's insurance, taxes and/or hazard insurance and/or any other judgments, liens, violations, or actions under paragraph 23, then Borrower will pay interest on the sums advanced at the rate specified in Borrower's Note.

(E) In the event the premises suffers damage or Borrower's statements and/or representations have been found to be false prior to the disbursement of funds, Lender, in its sole discretion, may cancel this Note and Lender shall have no further obligations to the Borrower. Lender agrees that Lender will file a Satisfaction of Mortgage in the county this Security Instrument is filed with the Office of the County Clerk prior to cancellation by Lender.

(F) In the event that any check paid by Borrower to Lender is returned unpaid then and in that event Lender may, at Lender's option, require bank or certified funds for each payment made thereafter.

(G) In the event the Borrower(s) herein cause or bring any action, proceeding or petition for the assignment, liquidation or rearrangement of their total indebtedness under any federal, state or local statute, and in such event there is an improper impairment of the lien of this Security Instrument within the meaning of any Title, Code or local statute therein relevant, there shall be allowed, awarded and granted to the holder of this Security Instrument by the court or tribunal having jurisdiction thereof, reasonable legal fees incurred to protect the lien of this Security Instrument against such improper impairment, or in the event the holder of this Security Instrument is required to bring on any motion or proceeding to vacate any stay or compel rejection of any proposed plan. Such award of reasonable counsel fees shall be based upon the reasonable hourly billing rate of an experienced real estate/bankruptcy practitioner within the jurisdiction of the court or tribunal, and without any reference or regard direct or indirect to the now disused theory of "economy of administration."

(H) In addition, Lender shall be entitled to charge interest on all accrued interest, foreclosure costs, attorney fees whether incurred as a result of the foreclosure or the bankruptcy proceeding, or other pre petition arrearage payable pursuant to or through any plan in the bankruptcy proceeding. The interest rate shall be the same rate charged under the Note secured by this Security Instrument.

## 25. ACCELERATION; DEFAULT; REMEDIES

In the event of a default by Borrower, in any of its covenants and agreements hereunder or in the event of a breach of any of Borrower's representations and warranties herein, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand or notice to Borrower and may invoke any remedy permitted by applicable law. If the lender requires payment in full, or in the event of a foreclosure action, I agree to pay reasonable legal fees, principal and interest, costs and disbursements, allowances and additional allowances as may be awarded by any judgment of foreclosure and sale added thereto. After acceleration and until a judgment has been entered, I shall pay this total amount with interest, up to the day you actually receive such payment. After a judgment has been rendered, the interest rate will be the highest permitted by the state of Illinois.

In addition, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 25, including, but not limited to, reasonable attorney's fees, and cost of title evidence. Upon acceleration, Borrower shall have no right to reinstate. All rights and remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively.

## 26. BORROWER'S COMPLIANCE

a) Upon the request of the Lender, its successors or assigns, I shall:

1) furnish and execute any documents required by the Lender to verify the truth and accuracy of any information provided by me in connection with any mortgage loan, including, but not limited to, income, employment, deposit and loan authorizations and verifications, income tax returns, and contracts and settlement statements for the sale of other properties.

2) execute any document that should have been signed at or before the closing; re-execute any document signed at or before the closing; and execute that which was incorrectly drafted and signed at the closing, including but not limited to, correction notes, correction mortgages and other correction instruments;

3) furnish any documents required by, and comply with any conditions, work and/or certificates set forth in Lender's appraisal report or firm commitment.

4) execute any additional documentation and provide any additional information required by the Lender to facilitate the sale of the mortgage into the secondary mortgage market.

b) I represent and agree that all request by Lender will receive the full cooperation of and compliance by me within five days of the making of the requests, and the obligations hereunder shall survive the closing.

c) It is further agreed that my failure to comply with the representations and agreements hereunder shall constitute a default under the note and mortgage executed in connection with this agreement, and shall entitle the Lender, its successors or assigns to any and all of the remedies available upon default under the note and/or mortgage, including collection of default interest, attorney's fees, costs and disbursements.

0021352428

**27. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the promises and agreements of each are incorporated as a part of this Security Instrument.
[Check applicable box(es)]

_____Adjustable Rate Rider    _____Biweekly Payment Rider    _____Condominium Rider
_____Graduated Payment Rider    _____1-4 Family Rider    _____Planned Unit Development Rider
_____Rate Improvement Rider    _____Second Home Rider    _____V.A. Rider
_____Other_____

**BY SIGNING BELOW,** Borrowers accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded with it.

Witness:

Borrowers:

_____
DAVID B. NOVAK

_____
DENISE A. NOVAK

**STATE OF ILLINOIS,** _____ COOK _____ County ss:

On this 8th day of October 2002 , before me personally came
DAVID B. NOVAK, DENISE A. NOVAK

known to me to be the individual(s) described herein and who executed the foregoing instrument, and They duly
acknowledged to me that they executed the same.

_____
Notary Public

"OFFICIAL SEAL"

# ADJUSTABLE RATE RIDER

## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th day of October 2002 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FIDELITY MORTGAGE INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

Property Address: 450 WESTMOOR ROAD, WINNETKA, IL 60093

Address # 2:

Address # 3:

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**1.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 8.290 %. The Note provides for changes in the interest rate and the monthly payments as follows:

**2.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of November 2005 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in "The Wall Street Journal." The most recent Index figure available as of the 15th day of the month 2 months prior to the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 640 Thousandths percentage point(s) ( 6.640 %) to the Current Index. The Note Holder will then round the result of this addition to the next highest Five Basis Points (.05%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.290 % or less than 08.290 Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.290 or less than 08.290 %. In the event of default your interest rate will be the greater of the adjusted Note rate or 16%. However, should your property be located in one of the following states the default rate will be the adjusted note rate at the time of default Illinois, Kansas, Maryland, Massachusetts, Maine, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia, & Wisconsin.

0021352428

**.(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

DATE:  October 8, 2002

DAVID R. NOVAK

DENISE A. NOVAK

The attached Mortgage covers real property principally improved by a one to four family dwelling.

Premises commonly known as:

   950 WESTMOOR ROAD, WINNETKA, IL  60093

District _____ Section _____ Block _____ Lot _____

_____
DAVID B. NOVAK

_____
DENISE C. NOVAK


LOT 3 IN MORTON'S SUBDIVISION OF LOTS 37 AND 38 IN COUNTY CLERK'S DIVISION OF THAT PART OF THE
SOUTHEAST 1/4 OF SECTION 17, TOWNSHIP 42 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN
LYING WEST OF THE CHICAGO AND NORTHWESTERN RAILROAD, IN COOK COUNTY, ILLINOIS.


P.I.N.   05-17-412-004


FOR INFORMATION PURPOSES ONLY, COMMONLY KNOWN AS
950 WESTMOOR ROAD, WINNETKA, IL  60093



**O C W E N**

**Ocwen Loan Servicing**
Attn. Cashiering Department
P.O. Box 785056
Orlando, FL 32878-5056

866-
825-
9265

NC Permit No. 3948
**CUSTOMER RELATIONS 1-800-746-2936**
*Your call may be recorded for the coaching
and development of our associates.*

### Account Statement

| | |
|---|---|
| Account Number: | 0101742419 |
| Account Statement Date: | 07/18/2005 |
| Property Address: | |
| 950 Westmoor Road | |
| Winnetka IL 60093 | |
| PAGE 1 | re |

048EMS  06/21/05  14:45  0048817  20050719  SC8341L3  REG-STM41  1 OZ  DOM  5C82610000+  146851    MO

DAVID B NOVAK
DENISE A NOVAK
950 WESTMOOR ROAD
WINNETKA IL 60093-1838

### Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Current Forbearance Payment Due by 08/01/05: | 4,300.00 |
| Past Due Amount: | |
| Past Due Forbearance Payments: | 6,600.00 |
| Total Amount Due: | 12,900.00 |
| Assessed Fees/Expense Outstanding: | |
| Info Only - Late Charges: | 2,205.71 |
| Info Only - Prev-Returned Check Fee: | 25.00 |
| Info Only - Prev-Legal/Collection Expense: | 2,734.00 |
| Info Only - Prev-Property Inspection Expense: | 42.00 |
| Info Only - Prev-Property Valuation Expense: | 220.00 |
| Total Fees/Expense Outstanding: | 5,226.71 |

### Account Information

| | |
|---|---|
| * Current Principal Balance: | 442,598.18 |
| Interest Rate: | 8.29000% |
| Contractual Due Date: | 12/01/2004 |
| Forbearance Due Date: | 06/01/2005 |
| Escrow Advance Balance: | 11,632.04- |
| Current Suspense Balance: | 2,008.94 |
| Interest Paid Year-To-Date: | 12,253.35 |
| Taxes Paid Year-To-Date: | 9,990.71 |
| Recently Assessed Amounts: | |
| June- 2005 Late Charges: | 169.67 |
| July- 2005 Late Charges: | 169.67 |

*This is the principal balance only, not the amount required to pay your account in full.

### Recent Account Activity

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/ Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 07/08/05 | Tax Disbursement COOK COUNTY | .00 | .00 | 5272.92- | .00 | .00 | .00 | .00 | 5272.92- |
| 07/08/05 | Tax Disbursement COOK COUNTY | .00 | .00 | 5.00- | .00 | .00 | .00 | .00 | 5.00- |
| 07/08/05 | Tax Disbursement COOK COUNTY COLLECTOR | .00 | .00 | 4707.79- | .00 | .00 | .00 | .00 | 4707.79- |
| 07/08/05 | Tax Disbursement COOK COUNTY COLLECTOR | .00 | .00 | 5.00- | .00 | .00 | .00 | .00 | 5.00- |

We may report information about your account to credit bureaus. Late Payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to www.ftc.gov/bcp/conline/edcams/credit.

### Important Messages

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. Your loan is under a Forbearance Plan. All payments due under the terms of the original Mortgage or Note paid during this Forbearance Plan continue to accrue monthly late fees, and remain your responsibility to pay. Your account will be reported to the credit bureaus as contractually delinquent until brought current.

**NEED CASH FOR HOME IMPROVEMENTS? PURCHASING A NEW PROPERTY? CALL DELTA FUNDING AT 800-225-5335 X-8888.**

ACCIDENTS HAPPEN EVERYDAY. BE PREPARED TO PROTECT YOUR HOME AND FINANCIAL SECURITY. CALL 1-800-348-7569 TO ENROLL IN ACCIDENTAL DEATH AND DISABILITY INSURANCE.

**IF YOU ARE CURRENTLY IN BANKRUPTCY OR IF YOU HAVE FILED FOR BANKRUPTCY SINCE OBTAINING THIS LOAN, PLEASE READ THE BANKRUPTCY INFORMATION PROVIDED ON THE BACK OF THIS STATEMENT.**

FOLD AND DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE. PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

FOLD AND DETACH HERE

08CV2528          TC
JUDGE LEINENWEBER
MAGISTRATE JUDGE KEYS

# EXHIBIT 2

Civil Action Cover Sheet - Case Initiation        (Rev. 2/8/06) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

DENISE A NOVAK

       v.

OCWEN FEDERAL BANK FSB

} No.

```
2008L003215
CALENDAR/ROOM Q
TIME 00:00
Consumer Fraud
```

FILED 08 MAR 24 AM 10:49 DOROTHY BROWN CIRCUIT COURT OF COOK COUNTY ILLINOIS LAW DIVISION CLERK

## CIVIL ACTION COVER SHEET - CASE INITITATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. ONLY ONE (1) CASE TYPE MAY BE CHECKED WITH THIS COVER SHEET.

(FILE STAMP)

Jury Demand ☐ Yes ☒ No

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  *(Please Specify Below**)*
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud
- ☒ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  *(Please Specify Below**)*
- ☐ 075 Other Commercial Litigation
  *(Please Specify Below**)*
- ☐ 076 Retaliatory Discharge

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confession of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** DENISE NOVAK

By: _Friedman + Wexler_

FRIEDMAN & WEXLER LLC #91761

       (Attorney)             (Pro Se)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

4

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS      CCG N001-10M-1-07-05 |

RECEIVED
MAR 2 8 2008
RECORD KEEPING

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT,       LAW              DIVISION

(Name all parties)

**DENISE A NOVAK**

v.

**OCWEN FEDERAL BANK FSB**

No. _____

2008L003215
CALENDAR/ROOM Q
TIME 00:00
Consumer Fraud

SERVE:  **ILLINOIS CORP SERVICE**
**801 ADLAI STEVENSON DR**
**SPRINGFIELD, IL. 62703 426**

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

| Atty. No.: __91761__ | WITNESS, MAR 24 2008 |
| Name: __FRIEDMAN & WEXLER LLC__ | |
| Atty. for: __PLAINTIFF__ | |
| Address: __500 W MADISON ST #2910__ | Clerk of Court |
| City/State/Zip: __CHICAGO, IL. 60661__ | Date of service: _____ |
| Telephone: __312-474-1000__ | (To be inserted by officer on copy left with defendant or other person) |

Service by Facsimile Transmission will be accepted at: _____

(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## ...nedman&Wexler,L.L.C.

ATTORNEYS AND COUNSELORS
500 W. Madison Street, Suite 2910
Chicago, IL 60661-2587
(312) 474-1000
Fax (312) 474-0408
** Outside Illinois **
Call Toll Free
1-800-843-4656
Web Site: friedmanandwexler.com

WAYNE R. RHINE, RETIRED JUDGE
(1983-2006)
KEITH J. RHINE
ADAM ROBERTS
CARL LLOYD G. SANTOS
JEREMY WEDDLE

GERALD S. LEVY*
MICHAEL E. FRIEDMAN*
*DIRECTOR OF OPERATIONS
*EXECUTIVE DIRECTOR

ADDITIONAL OFFICE LOCATIONS
INDIANAPOLIS, IN
FORT LAUDERDALE, FL
HOUSTON, TX
SEATTLE, WA

AFFILIATED OFFICES
WEXLER & WEXLER LLC
CHICAGO, IL

LAW OFFICE LAWRENCE FRIEDMAN, P.C.
CHICAGO, IL

*OF COUNSEL*
THOMAS SHANAHAN

LAWRENCE CHAMBERS

LAWRENCE FRIEDMAN, RET.

March 25, 2008

Sheriff of Sangamon County
800 E Monroe
Springfield, Il. 62701
Civil Div.

Re: Denise A Novak
Vs: Ocwen Federal Bank FSB
08L 003215
Our File #70002.1

Enclosed please find a Summons and Complaint we wish your office to serve along with a check for $30.00 to cover your costs and self addressed stamped envelope for your convenience. Kindly forward your return of service to our office at your earliest opportunity.

Thank you for your cooperation,

Very truly yours,
**FRIEDMAN & WEXLER LLC**

**Enclosure:**



## SANGAMON COUNTY SHERIFFS OFFICE
*"Keeping the Peace Since 1821"*

### NEIL M. WILLIAMSON
#1 Sheriffs Plaza
Springfield, Illinois 62701

Administration - (217) 753-6855 -
Civil Process/Records - (217) 753-6846

Investigations - (217) 753-6840
Corrections - (217) 753-6886

I, __Donald Schuh #4267__ certify that I served this summons as follows:

☒  Corporation service, by leaving a copy of the summons and complaint with an agent or officer of the corporation listed in the summons.

☐  Other: _____

Case Number _2008 L 3215_

Name of defendant _OC Wen Federal Bank FSB_
C/O ILL, Corp. inc.

Name of other person
Summons left with _Holly Blankenship_

Sex (Female) Race: White Approx. age _20_

Date of Service _4-2-08_ Time _____

Address at which paper was served:

801 Stevenson Dr.

Springfield, Il

Service fees : $30.00

*(stamp, sideways):* 2008 APR 16 AM 10: 24   DOROTHY BROWN CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL

Neil Williamson, Sheriff of Sangamon County

By, _____ , Civil Process Officer

IN PARTNERSHIP WITH THE COMMUNITY

STATE OF ILLINOIS     )
                         )
COUNTY OF COOK     )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DENISE A NOVAK | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| Vs. | ) | No. |
| | ) | |
| OCWEN FEDERAL BANK FSB | ) | 2008L003215 |
| | ) | CALENDAR/ROOM Q |
| | ) | TIME 00:00 |
| Defendant | ) | Consumer Fraud |

### COMPLAINT

Now comes the Plaintiff, DENISE A NOVAK, by her attorneys, FRIEDMAN & WEXLER LLC by Wayne Rhine and complains of the defendant, OCWEN FEDERAL BANK FSB as follows:

### PARTIES

1)      The Plaintiff, DENISE A NOVAK is a resident of the County of Cook and is the owner as tenants by the entirety of a certain property described as:

Lots 37 and 38 in County Clerk's Division of that part of the Southeast ¼ of Section 17, Township 42 North, Range 13, East of the Third Principal Meridian lying West of the Chicago and Northwestern Railroad in Cook County, Illinois commonly known as 950 Westmoor Road, Winnetka, Illinois 60093. Permanent Index No. 05-17-412-004.

2.

2)      That OCWEN FEDERAL BANK FSB is a federal savings bank chartered and regulated by the Office of Thrift Supervision pursuant to the Home Owners Loan Act, and it is licensed to and does transact business in the State of Illinois, County of Cook.

3)      That venue and jurisdiction is proper in the State of Illinois, County of Cook as all events complained of herein occurred in Cook County.

## ACTS COMMON TO THIS COMPLAINT

1)      That on or about, October 8th, 2002, the parties hereto entered into a mortgage for the aforesaid property in the amount of $450,000.00 and said mortgage was recorded in the Cook County Recorder of Deeds Office on December 9th, 2002, as document #00213524289, said mortgage being with Fidelity Mortgage Inc but serviced by the Defendant, OCWEN FEDERAL BANK FSB.

2)      That there existed in the State of Illinois a statute entitled High Risk Home Loan Act (815 ILCS 137/7).

3)      That at all times complained of herein there existed in the State of Illinois a statute entitled Deceptive Practices, Consumer Fraud and Deceptive Practices Act 815 ILCS 505 et.seq.

## LIABILITY

1)      That due to circumstances beyond the control of the Plaintiff, the Plaintiff fell behind in mortgage payments in 2003.

3.

2)    That the Plaintiff was able to gather the sums necessary to bring the mortgage current.

3)    That upon contacting the Defendant concerning bringing the mortgage current, the Plaintiff was advised that the Defendant would not accept the payment unless a foreclosure agreement was executed, thus, violating Plaintiff's right to bring the mortgage current.

4)    That in December of 2005, the Plaintiff fell behind in her mortgage payments.

5)    The Plaintiff paid approximately $12,000.00 but the Defendant OCWEN FEDERAL BANK FSB refused the payment unless the Plaintiff signed another forbearance agreement, again, violating Plaintiff's rights to bring the mortgage current.

6)    Despite the efforts of the Plaintiff to bring her mortgage current, a mortgage foreclosure action was filed against the Plaintiff in case #04CH 6262 by the alleged assignees of the Defendant.

7)    That in June of 2006, the Plaintiff sent OCWEN FEDERAL BANK FSB two checks to cover the mortgage payments.  One check was in the amount of $8,100.00. The Defendant admitted receiving one check but not the other. The Defendant insisted on receiving a replacement check for $1,000.00, even though the Plaintiff faxed the Defendant 2 or 3 times, a copy of the cancelled check for $1,000.00.

4.

8)    That the Defendant notified the Plaintiff not to send any more payments until the issue of the $1,000.00 check was resolved.

9)    That it took the Defendant more than 5 months to resolve this issue.  As a result a higher rate of interest was applied to the mortgage.

10)    That the Defendant has charged the Plaintiff for inspection fees, even though, no inspection was ever made of the property.

11)    That although most payments were made by the Plaintiff in a timely manner, the Defendant would often post the payments as being late resulting in late fees being charged to the Plaintiff.

12)    That considering the Plaintiff's assets and earning capacity, this loan should not have been made.

13)    That as a direct and proximate conduct of the Defendant as set forth above the credit scores of the Plaintiff has been greatly reduced with the result that the Plaintiff has been unable to obtain other credit or to refinance this mortgage.

14)    That the conduct of the Defendant taken in its entirety constitutes deceptive business practices in violation of the Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505 et.al.

**WHEREFORE,** Plaintiff prays for damages against the Defendant, OCWEN FEDERAL BANK FSB in the sum in excess of Fifty Thousand Dollars, ($50,000.00) plus costs and reasonable attorneys' fees.

DENISE A. NOVAK

5.

Now comes Denise A Novak pursuant to Chapter 735 Section 5/1-109 of the

Illinois Revised Statue and states that she has read the above and foregoing

complaint her subscribed and that the same is true in substance and in fact.

DENISE A NOVAK

WAYNE RHINE, ESQ.

FRIEDMAN & WEXLER LLC
BY: WAYNE RHINE, ESQ.
ATTORNEYS FOR PLAINTIFF
500 W MADISON ST., SUITE 2910
CHICAGO, IL. 60661
312-474-1000
ATTORNEY NO. 91761

0021352428
0791/0042 46 006 Page 1 of 15
2002-12-09 14:05:58
Cook County Recorder    52.50

World Title Guaranty, Inc.
880 N. York Road
Elmhurst, IL 60126
WORLD TITLE #/ 025209619

Prepared By And
Mail To:
FIDELITY MORTGAGE, INC
1000 WOODBURY RD. #200
WOODBURY, NY 11797

_____ Space Above This Line for Recording Information _____

# MORTGAGE

Loan Number: 0101742419        MIN Number: 100076600012315176
App Number: 020812C728

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Security Instrument." This Mortgage, which is dated    October 8, 2002    will be called the "Security Agreement."

(B) "Borrower(s)." DAVID B. NOVAK and DENISE A. NOVAK, HUSBAND AND WIFE    sometimes

residing at    950 WESTMOOR RD, WINNETKA, IL 60093
will be called Borrower, and sometimes simply "I" or "me."    will be called "Lender."

(C) "Lender." FIDELITY MORTGAGE INC.
Lender is a corporation which exists under the laws of the STATE OF Delaware
Lender's address is    8044 MONTGOMERY ROAD, SUITE 469, Cincinnati, OH 45236

(D) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgage under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(E) "Note." The Note signed by Borrower and dated    October 8, 2002    will be called the "Note." The Note shows that I owe Lender (\$    450,003.00    ) plus interest. I have promised to pay this debt in monthly payments and to pay the debt in full by    November 1, 2032

(F) "Property." The property that is described below in the section titled "Description of the Property" will be called the Property, which is located in    COOK    COUNTY, ILLINOIS.

(G) "Sums secured." the amounts described below in the section titled Borrower's Transfer to Lender of Rights in the Property sometimes will be called the "sums secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property described below to Lender, subject to the terms of this Security Instrument. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender assigns) and to the successors and assigns of MERS those rights that are stated in this Security Instrument, and also those rights that the law gives to lenders who hold mortgages on real property. Borrower understands and agrees

14 P(a) R 2

Doc #20133 : 9:LNTA

002.52428 Page 2 of 15

that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note, with interest, and all renewals, extensions and modifications to the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument, and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (J) below, particularly:

(A) Commonly known as: 950 WESTMOOR ROAD, WINNETKA, IL 60093

Address #2:

Address #3:

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;

(D) All rents or royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section; along with but not limited to stoves, refrigerators, washers, dryers, dishwashers, ovens, air conditioning units;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future;

(I) All replacements of, or additions to, the Property described in subparagraphs (B) through (H) of this section; and

(J) All of the amounts that I pay to Lender under Paragraph 2 below.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security agreements all over the country. It contains non-uniform promises and agreements that vary to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

DOC #20124 - NILMTG

0021352428 *ge 1 of 15*

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES & INSURANCE**

**A) Borrower's Obligations**

I will pay to Lender all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the property and mortgage insurance (if any).  I will pay those amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

Each of my payments under this Paragraph 2 will be the sum of the following:
  (i) One twelfth of the estimated yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument; plus
  (ii) One twelfth of the estimated yearly leasehold payments or ground rents on the Property, if any; plus
  (iii) One twelfth of the estimated yearly premium for hazard insurance covering the Property (if any); plus
  (iv) One twelfth of the estimated yearly premium for mortgage insurance (if any); plus
  (v) One twelfth of the estimated yearly premium for flood insurance (if any).

In accordance with applicable law, Lender will estimate from time to time my yearly taxes, assessments, leasehold payments or ground rents and insurance premiums. Lender will use existing assessments and bills and reasonable estimates of future assessments and bills. Lender may, at any time, collect and hold items under Paragraph 2 in an aggregate amount not to exceed the maximum amount that may be required for Borrower's account under the Real Estate Settlement Procedures Act of 1974, 12 USC 2601 et seq., and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time. ("RESPA"), except that I will pay to Lender an additional sum equal to one sixth of the aggregate amount of yearly payments under this paragraph 2 or a lesser amount if required by applicable law. This sum is known as the "reserve" or "cushion," and is permitted by RESPA for unanticipated disbursements or disbursements before my payments are available in the account. These amounts that I pay to Lender for these items under Paragraph 2 will be called the "Funds." These Funds may be commingled with the funds of the Lender unless the law requires otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender may require Borrower to pay a one time charge for an independent real estate tax reporting service used by Lender in connection with the loan, unless applicable law provides otherwise.

**B) Lender's Obligations**
Lender will use the Funds to pay the above listed items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

**C) Adjustments**
If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Security Instrument, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of funds. There will be excess amounts if, at any time, the sum of (i) the amount of funds which Lender is holding or keeping, plus (ii) the amount of the monthly payments of funds which I still must pay between that time and the due dates of these items is greater than the amount necessary to pay the above listed items when they are due.   If the Funds exceed the amounts permitted to be held by RESPA, Lender shall deal with excess funds as required by RESPA.

0021352428 Page 4 of 15

If, when payments of these items are due, Lender has not received enough Funds to make those payments, I will pay to Lender whatever additional amount is necessary to pay the these items in full. I must pay that additional amount in one or more payments as Lender may require, and permitted by RESPA.

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note;
Next, to pay late charges under the Note;
Next, to pay any amounts due to Lender under Paragraph 2 above or other advances;
Next to pay interest due; and
Last to pay principal due.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, charges, fines and impositions attributable to the Property and that may be superior to this Security Agreement. I will also make payments due under any lease if I am a tenant on the Property and I will pay, ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to time to the person owed them (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments, I will give Lender a receipt which shows that I have done so. If I make payments to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if:

(A) I agree, in writing to pay the obligation which gave rise to the superior lien, and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that during the lawsuit the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement approved in writing by Lender that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days from the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE

I will obtain hazard insurance to cover all buildings and other improvements that are now, or in the future, will be located on the Property. The insurance must cover loss or damage caused by fire hazards normally covered by "extended coverage" hazard insurance policies, and other hazards, including floods or flooding, for which lender or state or federal government requires coverage. The insurance must be in the amounts and for the periods of time required by Lender or government agency. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain coverage as described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in accordance with this paragraph and paragraph 7. If the property is determined to be located in a flood zone that requires flood insurance, as designated by the Federal Emergency Management Agency or another agency that has the authority to make such determination, I understand that I will be required to obtain flood insurance coverage for the property.

All of the insurance policies and renewals of those policies must include what is known as a "Standard Mortgagee" clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

Doc 220182 - 71MTL

0021352428 rag 1 of 16

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so. The amount paid by the insurance company is called "proceeds." I authorize the Lender to settle any claims and collect the proceeds on my behalf and use them to reduce the amount I owe to Lender under the Note and under this Security Instrument (whether or not repairs have been made by me), or Lender may release the proceeds to me for use in the repair or restoration of the damaged Property. Lender may use the proceeds to repair or restore the property or to pay the sums secured.

If any proceeds are used to replace the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 25 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the sums secured immediately before the Property is acquired by Lender or sold.

In the event that Borrower fails to maintain hazard insurance or flood insurance as outlined in this Paragraph 5, or has the policy cancelled, then and in that event, Lender may obtain the necessary insurance.   Lender may charge borrower a "surcharge" to cover the costs and administration of said insurance, and will be responsible for the payment of these fees and all premiums on said insurance. If the Lender obtains insurance, it will only provide protection for the premises. Contents, liability and other items will not be insured.

Borrower irrevocably assigns to lender all of my right, title and interest in any tax/insurance escrow refunds, insurance proceeds or the like regardless of how designated, which is/are in any way related to the subject property, and authorizes these amounts to be paid directly to Lender. Lender will credit all payments to the borrower(s) account in the order of priority, as specified in paragraph 3 hereof.

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**
I will keep the Property in good repair. I will not destroy, damage or substantially change the Property,  and I will not allow the Property to deteriorate. If I do not own but am a tenant on the property, I will fulfill my obligations under any lease.  I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights under the Note or in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Note and Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amount, with interest, which Lender spends under this Paragraph 7.  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above.

00213532428 Page 8 of 35

**8. LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times.

**9. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the property and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the sums secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the sums secured immediately before the taking divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the sums secured. The 30 day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to the Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A) Borrower's Obligations**

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument. Lender may allow these delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling the obligation of the Note or the Security Instrument.

**(B) Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Extension of time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 19 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and this Security Instrument.

**11. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Any person who takes over my right or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may

be required to pay all sums secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument, and (B) that person is not personally obligated to pay the sums secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or so modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 12. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all sums secured by this Security Instrument as that phrase is defined in Paragraph 19 below. If Lender requires immediate payment in full under this Paragraph 13, Lender will take the steps and may act as specified in Paragraph 19 below.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a written notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by Federal law and the laws of the jurisdiction where the property is located.

The borrower hereby consents and agrees that the debt hereby secured, or any part thereof, may be renewed or extended beyond maturity as often as may be desired by agreement between the creditor and any subsequent owner of the property, and no such renewal or extension shall in any way affect the borrower's responsibility, whether as surety or otherwise. The borrower and any other party assuming liability hereunder hereby consent and agree that if the property conveyed hereby or a substantial portion thereof is transferred to any subsequent owner, and the creditor exercises the right to accelerate the debts secured hereby, the creditor may accept any delinquent payments or other sums of default giving rise to such acceleration from the then owner of the property or any other person and reinstate the indebtedness in accordance with the schedule of maturity as of the time of acceleration or upon such new schedule as may be agreed if renewal or extension are otherwise permitted and no such reinstatement shall in any way affect the liability of such prior parties, whether as surety or otherwise.

If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflicts with the law can be separated from the remaining terms, and the remaining terms will still be enforced. The borrower hereby waives its right to a jury trial.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument and hereby acknowledge receipt thereof.

0021 52428 Page 8 of 15

## 17. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (A) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property; (B) the creation of a purchase money security interest for household appliances; (C) a transfer by devise, descent or by operation of law upon the death of a joint tenant; or (D) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with Paragraph 14 hereof. Lender may, without further notice or demand on Borrower, invoke any remedies permitted by this Security Instrument.

Lender may consent to a sale or transfer if (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable (3) interest will be payable on the sums secured by this Security Instrument required by Lender are made, acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender. To the extent permitted by applicable laws, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrowers will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

## 18. BORROWER'S WARRANTIES REGARDING FORFEITURE

Borrower states that he will not use, and will not permit any third party to use the Property or any portion thereof or interest therein for any purpose that would cause the property to be subject to forfeiture. Borrower further states that the Property has not been acquired with the proceeds from any transaction or activity that would thereby cause the property to be subject to forfeiture.

## 19. LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL

If I fail to keep any promises or agreements made in the Note or in this Security Instrument, including the promises to pay when due the amounts I owe to Lender, I will be in default. If this occurs, the Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment in Full." If I am in default for any reason, you have the right to demand payment of the entire amount I owe you. If Lender requires payment in full or in the event of a foreclosure action, I agree to pay reasonable and permissible legal fees, costs and disbursements, and that such total amount shall be paid by me with interest, as specified in paragraph 25, up to the day you actually receive such payment, even after foreclosure occurs.

In any lawsuit for sale, Lender will have the right to (i) collect all costs allowed by law, (ii) have the Property sold as one parcel; and (iii) have a Receiver appointed by the Court without first giving notice to me and without regard to the value of the Property.

Upon acceleration, Borrower shall have no right to reinstate.   All rights and remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively.

0021352428 *Page 7 of 15*

## 20. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires Immediate Payment in Full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may; (A) collect the rental payments, including overdue rental payments. directly from the tenants: (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. If Lender notifies the tenants, Lender has the right to collect rental payments to Lender without having to ask whether I failed to keep any promises and agreements under this Security Instrument. If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and/or managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. The costs of managing the Property may include the receiver's fees, reasonable attorney's fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

If I fail to make any payments or keep promises under this Security Instrument or the Note, then I shall pay monthly in advance to you or to any receiver a fair charge for the use of the Property that I occupy. If I do not pay this fair charge, you or the receiver may sue to collect it or to remove me, or both. I will not collect more than one (1) month's rent in advance from any tenant or occupant without your written consent.

## 21. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument the Lender will release this Security Instrument and deliver a certificate stating this Security Instrument has been paid in full. Lender will then deliver a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the Release in the proper official records.

## 22. ADDITIONAL CHARGES

I agree to pay all reasonable charges in connection with the servicing of this loan, including but not limited to obtaining tax searches and bills and in processing insurance loss payments, ownership transfers, releases, easements, consents, extensions, modifications, special agreements, assignments, reduction certificates, asset recovery and satisfaction of mortgage.

In the event Borrower directs Lender to order any reports, appraisals, searches, examinations and/or the like, I agree that the expense for the same is to be added to the balance of the existing mortgage, if same is not paid within 30 days of written notification.

## 23. HAZARDOUS SUBSTANCES

Borrower shall not create or suffer to exist, or permit any of its agents, employees, contractors, tenants, or invitees to create or suffer to exist any lien, security interest charge or encumbrance against the Property or any portion thereof, relating to any physical or environmental condition, including, but not limited to, any lien imposed pursuant to section 107(f) of the Superfund Amendments and Reauthorization Act of 1986 (42 U.S.C. 9607(f)) or any similar federal, state, or local statute, regulation, rule, order, or ordinance.

Borrower shall not cause or permit any other party to cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any environmental law.

0021352428 Page 10 of 16

Borrower shall promptly give the Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or environmental law, of which the Borrower has actual knowledge or should have actual knowledge. If Borrower learns or is notified by any governmental or regulatory authority that any removal or remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take necessary remedial, removal, and other actions necessary to clean up and remove all Hazardous Substances, solid wastes, or contaminants on, in, from, or affecting the property or any portion thereof, in accordance with environmental law, to the satisfaction of the lender and in accordance with all orders and directives of governmental authorities having jurisdiction over the Property and/or such substances or materials. If Borrower fails to take remedial action, and upon receipt of notice from any party asserting the existence of any Hazardous Substances affecting the property that if true may result in an order, suit, imposition of a lien on the property, or other action, or if the lender in good faith believes would jeopardize its security interest, the Lender at its option shall take whatever action is necessary in accordance with environmental law, to clean up, remove, resolve or otherwise remediate the situation. All reasonable costs and expenses paid or incurred by Lender in the exercise of such rights shall be secured by the liens securing this loan and shall be payable by borrower upon demand by Lender.

Borrower shall indemnify, exonerate, defend and hold harmless Lender, its officers, directors, shareholders, agents, and employees, from and against any and all claims, demands, obligations, penalties, fines, suits, liabilities, settlements, damages, losses, costs, and expenses (including but not limited to, attorney and consultant fees and expenses investigation fees, laboratory expenses, cleanup costs, court costs, and other expenses of litigation or arbitration), as well as any such fees and expenses incurred in enforcing this indemnity, and any violation of any applicable environmental laws in effect on or before the date hereof or hereafter made effective.

As used in this document, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law, and the following substances: gasoline, kerosene, other flammable or toxic petroleum products or by products, toxic pesticides, herbicides and fungicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.

As used in this document, "Environmental Law" means federal, state, and local laws, statutes, rules, regulations, judicial orders and decisions that relate to health, safety or environmental protection and maintenance in the jurisdiction where the property is located.

### 24. MISCELLANEOUS PROVISIONS

(A) In the event that the holder of this Security Instrument be required to retain legal counsel for the purpose of commencing foreclosure proceedings hereunder, a reasonable sum shall be added to the said indebtedness, as fair and reasonable legal fees and deemed secured hereby in addition to expenses, costs, allowances as provided by law.

(B) If this Security Instrument involves a condominium unit, any failure to pay common charges when they become due shall be considered a default under the terms of this Security Instrument.

(C) In the event that Borrower is permitted to cure a default of the Note and/or Mortgage pursuant to the United States Bankruptcy Code (Title 11 U.S.C.) or other applicable law, the parties hereto specifically agree that the amount necessary to cure the default shall include the sum of all amounts past due under the terms of the Note and/or Mortgage, including all principal, interest, and late charges, and all amounts advanced by Lender pursuant to the terms of the Note and/or Mortgage, including all attorneys fees and costs, plus interest on such sum calculated at the annual interest required by the Note and/or Mortgage from the date on which Borrower elects to cure the default to the date on which the default is cured. Nothing herein shall be construed to allow Borrower the right to cure any default of the Note and/or Mortgage except as specifically authorized under the United States Bankruptcy Code (Title 11 U.S.C.) or other applicable law.

(D) In the event that Lender shall advance any money in order to pay Borrower's insurance, taxes and/or hazard insurance and/or any other judgments, liens, violations, or actions under paragraph 23, then Borrower will pay interest on the sums advanced at the rate specified in Borrower's Note.

(E) In the event the premises suffers damage or Borrower's statements and/or representations have been found to be false prior to the disbursement of funds, Lender, in its sole discretion, may cancel this Note and Lender shall have no further obligations to the Borrower. Lender agrees that Lender will file a Satisfaction of Mortgage in the county this Security Instrument is filed with the Office of the County Clerk prior to cancellation by Lender.

0021-52428 Page 21 of 26

(F) In the event that any check paid by Borrower to Lender is returned unpaid then and in that event Lender may, at Lender's option, require bank or certified funds for each payment made thereafter.

(G) In the event the Borrower(s) herein cause or bring any action, proceeding or petition for the assignment, liquidation or rearrangement of their total indebtedness under any federal, state or local statute, and in such event there is an improper impairment of the lien of this Security Instrument within the meaning of any Title, Code or local statute therein relevant, there shall be allowed, awarded and granted to the holder of this Security Instrument by the court or tribunal having jurisdiction thereof, reasonable legal fees incurred to protect the lien of this Security Instrument against such improper impairment, or in the event the holder of this Security Instrument is required to bring on any motion or proceeding to vacate any stay or compel rejection of any proposed plan. Such award of reasonable counsel fees shall be based upon the reasonable hourly billing rate of an experienced real estate/bankruptcy practitioner within the jurisdiction of the court or tribunal, and without any reference or regard direct or indirect to the now disused theory of "economy of administration."

(H) In addition, Lender shall be entitled to charge interest on all accrued interest, foreclosure costs, attorney fees whether incurred as a result of the foreclosure or the bankruptcy proceeding, or other pre petition arrearage payable pursuant to or through any plan in the bankruptcy proceeding. The interest rate shall be the same rate charged under the Note secured by this Security Instrument.

## 25. ACCELERATION; DEFAULT; REMEDIES

In the event of a default by Borrower, in any of its covenants and agreements hereunder or in the event of a breach of any of Borrower's representations and warranties herein, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand or notice to Borrower and may invoke any remedy permitted by applicable law.  If the lender requires payment in full, or in the event of a foreclosure action, I agree to pay reasonable legal fees, principal and interest, costs and disbursements, allowances and additional allowances as may be awarded by any judgment of foreclosure and sale added thereto.  After acceleration and until a judgment has been entered. I shall pay this total amount with interest, up to the day you actually receive such payment. After a judgment has been rendered, the interest rate will be the highest permitted by the state of Illinois.

In addition, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 25, including, but not limited to, reasonable attorney's fees, and costs of title evidence. Upon acceleration, Borrower shall have no right to reinstate.  All rights and remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively.

## 26. BORROWER'S COMPLIANCE

a) Upon the request of the Lender, its successors or assigns, I shall:
   1) furnish and execute any documents required by the Lender to verify the truth and accuracy of any information provided by me in connection with any mortgage loan, including, but not limited to, income, employment, deposit and loan authorizations and verifications, income tax returns, and contracts and settlement statements for the sale of other properties;
   2) execute any document that should have been signed at or before the closing; re-execute any document signed at or before the closing; and execute that which was incorrectly drafted and signed at the closing, including but not limited to, correction notes, correction mortgages and other correction instruments;
   3) furnish any documents required by, and comply with any conditions, work and/or certificates set forth in Lender's appraisal report or firm commitment;
   4) execute any additional documentation and provide any additional information required by the Lender to facilitate the sale of the mortgage into the secondary mortgage market.

b) I represent and agree that all request by Lender will receive the full cooperation of and compliance by me within five days of the making of the requests, and the obligations hereunder shall survive the closing.

c) It is further agreed that my failure to comply with the representations and agreements hereunder shall constitute a default under the note and mortgage executed in connection with this agreement, and shall entitle the Lender, its successors or assigns to any and all of the remedies available upon default under the note and/or mortgage, including collection of default interest, attorney's fees, costs and disbursements.

0021352428

## 27. RIDERS TO THIS SECURITY INSTRUMENT

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the promises and agreements of each are incorporated as a part of this Security Instrument.
[Check applicable box(es)]

| ___Adjustable Rate Rider | ___Biweekly Payment Rider | ___Condominium Rider |
| ___Graduated Payment Rider | ___1-4 Family Rider | ___Planned Unit Development Rider |
| ___Rate Improvement Rider | ___Second Home Rider | ___V.A. Rider |
| ___Other_____ | | |

**BY SIGNING BELOW**, Borrowers accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded with it.

Witness:                          Borrowers:

_____

DAVID B. NOVAK

_____

DENISE A. NOVAK

_____

_____

**STATE OF ILLINOIS,** _____COOK_____ County ss:

On this 8th day of October 2002 before me personally came
DAVID B. NOVAK, DENISE A. NOVAK

known to me to be the individual(s) described herein and who executed the foregoing instrument, and they duly
acknowledged to me that they executed the same.

_____
Notary Public

# ADJUSTABLE RATE RIDER

## (LIBOR Index - Rate Caps)

**THIS ADJUSTABLE RATE RIDER** is made this **8th** day of **October**    **2002**    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the Security Instrument) of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **FIDELITY MORTGAGE INC.**,
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

Property Address: 150 WESTMOOR ROAD, WINNETKA, IL 60093

Address # 2:

Address # 3:

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**1.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 8.290    %. The Note provides for changes in the interest rate and the monthly payments as follows:

**2.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the **1st**    day of **November**    **2005**    and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in "The Wall Street Journal." The most recent Index figure available as of the 15th day of the month 2 months prior to the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before    each    Change Date,    the Note Holder will calculate my new interest rate by adding **Six and 640 Thousandths**    percentage point(s) ( **6.640%**    %) to the Current Index. The Note Holder will then round the result of this addition to the next highest Five Basis Points (.05%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.290** % or less than **08.290**    Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.290**    or less than **08.290**    %. In the event of default your interest rate will be the greater of the adjusted Note rate or 16%. However, should your property be located in one of the following states the default rate will be the adjusted note rate at the time of default: Illinois, Kansas, Maryland, Massachusetts, Maine, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia, & Wisconsin.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

DATE:  October 8, 2002

_____
DAVID E. NOVAK

_____
ESTHER E. NOVAK

OCT-09-2002  17:03

The attached Mortgage covers real property principally improved by a one to four family dwelling.

Premises commonly known as:

950 WESTMOOR ROAD, WINNETKA, IL  60093

District _____    Section _____    Block _____    Lot _____

DAVID B. NOVAK

DENISE M. NOVAK

LOT 3 IN MORTON'S SUBDIVISION OF LOTS 37 AND 38 IN COUNTY CLERK'S DIVISION OF THAT PART OF THE
SOUTHEAST 1/4 OF SECTION 17, TOWNSHIP 42 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN
LYING WEST OF THE CHICAGO AND NORTHWESTERN RAILROAD, IN COOK COUNTY, ILLINOIS.

P.I.N.  05-17-412-004

FOR INFORMATION PURPOSES ONLY, COMMONLY KNOWN AS
950 WESTMOOR ROAD, WINNETKA, IL 60093

TOTAL P.24



**O C W E N**

Ocwen Loan Servicing
Attn. Cashiering Department
P.O. Box 785056
Orlando, FL 32878-5056

*866-*
*025-*
*9265*

**CUSTOMER RELATIONS 1-800-746-2936**
*Your call may be recorded for the coaching
and development of our associates.*

## Account Statement

| | |
|---|---|
| Account Number: | 0101742419 |
| Account Statement Date: | 07/18/2005 |
| Property Address: | |
| 950 Westmoor Road | |
| Winnetka IL 60093 | |
| PAGE 1 | |

0488345  06/21/05  14.45  0060217  36058718 SGE24113 REG-STMT 1 OZ DOM SCR34100004 #6695!  MG

DAVID B NOVAK
DENISE A NOVAK
950 WESTMOOR ROAD
WINNETKA IL 60093-1838

### Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Current Forbearance Payment Due by 08/01/05: | 4,300.00 |
| Past Due Amount: | |
| Past Due Forbearance Payments: | 8,600.00 |
| Total Amount Due: | 12,900.00 |
| Assessed Fees/Expense Outstanding: | |
| Info Only - Late Charges: | 2,205.71 |
| Info Only - Prev-Returned Check Fee: | 25.00 |
| Info Only - Prev-Legal/Collection Expense: | 2,734.00 |
| Info Only - Prev-Property Inspection Expense: | 42.00 |
| Info Only - Prev-Property Valuation Expense: | 220.00 |
| Total Fees/Expense Outstanding: | 5,226.71 |

### Account Information

| | |
|---|---|
| * Current Principal Balance: | 442,598.18 |
| Interest Rate: | 8.29000% |
| Contractual Due Date: | 12/01/2004 |
| Forbearance Due Date: | 06/01/2005 |
| Escrow Advance Balance: | 11,532.04- |
| Current Suspense Balance: | 2,008.94 |
| Interest Paid Year-To-Date: | 12,253.36 |
| Taxes Paid Year-To-Date: | 9,990.71 |
| Recently Assessed Amounts: | |
| June- 2005 Late Charges: | 169.67 |
| July- 2005 Late Charges: | 169.67 |

*This is the principal balance only, not the amount required to pay your account in full.

### Recent Account Activity

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 07/08/05 | Tax Disbursement COOK COUNTY | .00 | .00 | 5272.92- | .00 | .00 | .00 | .00 | 5272.92- |
| 07/08/05 | Tax Disbursement COOK COUNTY | .00 | .00 | 5.00- | .00 | .00 | .00 | .00 | 5.00- |
| 07/08/05 | Tax Disbursement COOK COUNTY COLLECTOR | .00 | .00 | 4707.79- | .00 | .00 | .00 | .00 | 4707.79- |
| 07/08/05 | Tax Disbursement COOK COUNTY COLLECTOR | .00 | .00 | 5.00- | .00 | .00 | .00 | .00 | 5.00- |

We may report information about your account to credit bureaus. Late Payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to www.ftc.gov/bcp/conline/edcams/credit.

### Important Messages

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. Your loan is under a Forbearance Plan. All payments due under the terms of the original Mortgage or Note paid during this Forbearance Plan continue to accrue monthly late fees, and remain your responsibility to pay. Your account will be reported to the credit bureaus as contractually delinquent until brought current.

NEED CASH FOR HOME IMPROVEMENTS? PURCHASING A NEW PROPERTY? CALL DELTA FUNDING AT 800-225-5335 X-8888.

ACCIDENTS HAPPEN EVERYDAY. BE PREPARED TO PROTECT YOUR HOME AND FINANCIAL SECURITY. CALL 1-800-348-7569 TO ENROLL IN ACCIDENTAL DEATH AND DISABILITY INSURANCE.

IF YOU ARE CURRENTLY IN BANKRUPTCY OR IF YOU HAVE FILED FOR BANKRUPTCY SINCE OBTAINING THIS LOAN, PLEASE READ THE BANKRUPTCY INFORMATION PROVIDED ON THE BACK OF THIS STATEMENT.

FOLD AND DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE.
PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

FOLD AND DETACH HERE