**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DENISE A. NOVAK,** | |
| Plaintiff, | Case No. 08 C 2528 |
| v. | Hon. Harry D. Leinenweber |
| **OCWEN FEDERAL BANK FSB,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Ocwen Federal Bank FSB's Motion for Summary Judgment in Plaintiff's suit for fraud and deceptive practices. For the following reasons, Defendant's motion is **granted**.

### I. BACKGROUND

#### A. Facts

Plaintiff Denise A. Novak (hereinafter, "Novak") and her husband David Novak obtained a loan for $450,000 from Fidelity Mortgage Inc. on October 8, 2002. The loan had an adjustable interest rate and was secured by a mortgage on the Novaks' property in Cook County, Illinois. Ocwen Federal Bank FSB did not originate the loan but has been servicing the loan since October 16, 2002, when the loan was sold to Delta Funding Corporation. In April

2004, the loan was sold and the mortgage assigned to Wells Fargo Bank, N.A. Ocwen Federal Bank FSB dissolved in July 2005. Ocwen Loan Servicing, LLC (hereinafter, "Ocwen") is the successor in interest to Ocwen Federal Bank FSB and is the actual defendant in this case.

The Novaks defaulted under the terms of the loan in May 2003, and Ocwen initiated foreclosure proceedings on behalf of Wells Fargo in April 2004. Ocwen and the Novaks entered into a Forbearance Agreement in November 2004, whereby the foreclosure action was placed on hold, but not dismissed. The Novaks again fell behind on their payments, and the parties signed an additional forbearance agreement dated December 2006.

In February 2007, David Novak was convicted of mail fraud, ordered to pay restitution of over $400,000, and sentenced to two years in prison. The criminal court entered a forfeiture order against the Novaks' property, but that order has since been vacated. Denise Novak is unable to afford payments on the loan on her sole income.

Denise Novak filed this suit in state court, claiming that Defendant had violated the High Risk Home Loan Act, 815 Ill. Comp. Stat. 137, and the Consumer Fraud and Deceptive Business Practices

- 2 -

Act, 815 Ill. Comp. Stat. 505. Ocwen removed the case to federal court based on diversity jurisdiction.

## B. Issues

Novak claims that Ocwen violated the High Risk Home Loan Act when making the loan because the Novaks' assets and earning capacity did not justify the loan. Novak also claims that Ocwen violated the Consumer Fraud and Deceptive Business Practices Act by (1) refusing proffered payments by Novak unless Novak signed forbearance agreements; (2) filing a foreclosure action despite Novak's efforts to bring the mortgage current; (3) failing for five months to properly credit a $1,000 check; (4) charging Novak for inspection fees, although no inspections were conducted; and (5) belatedly posting Novak's timely payments so that Novak was charged improper late fees.

Ocwen filed a Motion for Summary Judgment, arguing that (1) Ocwen did not originate the loan and cannot be held liable for predatory lending or fraud claims relating to its origin; (2) Novak's claims are barred by the forbearance agreements she signed, in which she released Ocwen from such claims; and (3) Ocwen did not use deceptive practices because all payments and fees were properly applied to the loan.

Novak counters that the release she signed is not valid because it was a product of economic duress.

## II. **STANDARD OF REVIEW**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role when ruling on a motion for summary judgment is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue of material fact that warrants trial. *Id*. at 249. In making this determination, the court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir., 2000). The nonmoving party, however, may not rest on mere allegations, but must present specific facts showing that there is a genuine issue for trial. *Big O Tire*

*Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir., 1984).

### III. <u>DISCUSSION</u>

**A. Did Ocwen Violate the High Risk Home Loan Act?**

The parties do not dispute that Ocwen did not originate the loan. Novak argues that Ocwen may, nevertheless, be liable under the High Risk Home Loan Act because the Act applies to "creditors or brokers" who "deal in" high risk home loans. As the statute does not define "deal in," *see* 815 Ill. Comp. Stat. 137/10, the Court consults a dictionary definition. *See Zabinsky v. Gelber Group, Inc.*, 807 N.E.2d 666, 671 (Ill.App.Ct., 2004). *Black's Law Dictionary* (7th Ed. 1999) defines "deal" (verb) as "To distribute (something)," "deal" (noun) as "An act of buying and selling," and "dealer" as "A person who purchases goods or property for sale to others. . . ." In order to "deal in" loans, therefore, a person would have to be involved in the buying or selling of loans. Ocwen is merely the servicer of the loan. A servicer is one who is responsible for the collection of payments for the lender or noteholder. *See* 815 Ill. Comp. Stat. 137/10. Because Ocwen does not appear to have "dealt in" the loan, the statute cannot be said to apply to Ocwen on that basis.

Additionally, Ocwen does not appear to fit the definition of a "lender" or "broker" of the loan, and the statute expressly provides that "lender" does not include "purchasers, assignees, or subsequent holders of high risk home loans." 815 Ill. Comp. Stat. 137/10. Since Ocwen was not involved in the original granting of the loan, it does not appear that Ocwen, or the current noteholder, can be liable under the High Risk Home Loan Act.

As if that were not enough to earn summary judgment for Ocwen on this issue, Novak has never stated specific facts that would support her claim that the loan should not have been made in the first place. The statute defines "high risk home loan" in precise terms, and Novak states no specific facts to indicate that her loan falls under the terms of the statute. *See* 815 Ill. Comp. Stat. 137/10. This lack of specificity is enough, by itself, to entitle Ocwen to summary judgment on this issue. *See* FED. R. CIV. P. 56(e)(2). The Court therefore grants Ocwen's Motion for Summary Judgment on the issue of whether Ocwen violated the High Risk Home Loan Act.

**B. Does the Forbearance Agreement Bar Novak's Claims, or is the Agreement Invalid as a Product of Duress?**

The December 2006 Forbearance Agreement signed by the parties provides, in pertinent part, that:

> Borrower hereby releases Ocwen from any and
> all claims known or unknown that Borrower has
> against Ocwen, which in any way arise from or
> relate to the Note, the Mortgage, the Loan, or
> the Default.

This language appears to bar Novak's claims, but Novak claims that the agreement is invalid because it was signed under duress. Novak argues that she signed the forbearance agreement only because she was in fear of losing her home, where she lived with her two minor children.

First of all, the Court notes that threats to instigate foreclosure proceedings are insufficient, by themselves, to constitute duress. *See Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1332 (Ill.App.Ct., 1995). The elements of economic duress are (1) a wrongful act and (2) the absence of the quality of mind essential to the making of a contract. *Kewanee Production Credit Ass'n v. G. Larson & Sons Farms, Inc.*, 496 N.E.2d 531, 533 (Ill.App.Ct., 1986). While Novak alleges facts that would raise doubts about her state of mind when signing the forbearance agreement, the key issue is whether Ocwen committed any wrongful act. Novak argues that she and her husband were under economic duress because of the deceptive business practices she alleges against Ocwen. Accordingly, the Court will examine the wrongful acts alleged against Ocwen to determine if they survive the motion

for summary judgment. If none survive, Novak's duress argument fails.

### 1. Refusing Proffered Payments by Novak Unless Novak Signed Forbearance Agreement.

Novak argues that Ocwen, by refusing to accept payments after Novak defaulted unless she signed a forbearance agreement, violated her right to bring the mortgage current. Novak does not cite any legal basis, either in statute or contract, for this alleged right. Her argument is belied by the express terms of the mortgage agreement, which provides that if Novak defaults, the lender may require immediate payment of the entire amount of the note. Consequently, Ocwen was not obliged to accept payments that were less than the full amount of the note.

### 2. Filing a Foreclosure Action Despite Novak's Efforts to Bring the Mortgage Current.

Ocwen was within its rights under the mortgage agreement to file a foreclosure action once Novak fell behind on her payments. In fact, Ocwen waited about 11 months after Novak defaulted to begin foreclosure proceedings. Ocwen's entering into two forbearance agreements with Novak indicates that Ocwen was willing to give Novak second and third chances to bring her payments current, though Ocwen had no legal obligation to do so.

### 3. Failing to Properly Credit a $1,000

### *Check for Five Months*.

Ocwen admits that, initially, it mistakenly failed to credit the check properly. Ocwen alleges that it took Novak five months to present confirmation of the payment. When Novak did so, Ocwen credited the check within two days. Ocwen has submitted a dated fax transmission from Novak and a "Transaction History" business record to corroborate its version of events. Novak insists that she sent "2 or 3" earlier faxes to Ocwen regarding the uncredited check, but states no specific dates and presents no documentation to support her claim.

Novak claims, in addition, that the late crediting of the check resulted in her having to pay higher interest payments. Ocwen responds by pointing to the mortgage agreement, which specified an adjustable interest rate and provided that changes in Novak's interest rate would be triggered by changes in the London Interbank Offered Rate. Novak has offered no specific facts or evidence to refute Ocwen's argument. Thus, even if Ocwen were at fault for the late posting of the check, Novak has failed to establish that she was harmed by Ocwen's mistake.

### *4. Charging Novak for Inspection Fees, Although No Inspections Were Conducted.*

Ocwen has submitted property inspection work orders documenting that eleven inspections of the property were conducted between 2003 and 2006. Novak has offered no specific facts or evidence to refute Ocwen's evidence.

### *5. Belatedly Posting Novak's Timely Payments So That Novak Was Charged Improper Late Fees.*

Ocwen has submitted a "Transaction History" business record, detailing dates and amounts of Novak's payments made, and fees charged, on the loan. This shows that Novak frequently made her monthly payments after the 15th of the month, which, under the mortgage agreement, entitled Ocwen to charge late fees. The amount of the fees was in accordance with the agreement.

Novak's response is to file an affidavit asserting that "although most payments were made by the plaintiff in a timely manner the defendant Ocwen would often post the payments as being late." Novak cites no specifics as to which payments, or how many of them, were timely made but belatedly posted, nor does Novak specify how many days late the payments were posted. Additionally, Novak admits that she was late on her payments from December 2002 through May 2003, as well as her December 2003 payment.

Novak, or her attorney, are obviously mistaken as to what is required of her at the summary judgment stage of proceedings. The Seventh Circuit has held that "conclusory assertions, unsupported by specific facts . . . are not sufficient to defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Medical Center*, 328 F.3d 890, 894 (7th Cir., 2003). None of Novak's allegations of Ocwen's wrongdoing is supported by specific facts or legal theories. While Novak asserts that Ocwen's conduct, "taken in its entirety," violates the Consumer Fraud and Deceptive Business Practices Act, Novak does not specify which sections of the statute were violated.

Because none of Novak's allegations of wrongful acts by Ocwen stands up to the evidence, Novak has failed to establish a factual or legal basis for any wrongdoing by Ocwen that would support her theory of duress. Ocwen appears to have been simply doing its job of servicing the loan and to have given Novak considerable leeway. She is therefore left with no legal argument that would uphold her claim that the release clause in the forbearance agreement is not valid.

But even if the release clause had never been signed, Novak would still not have a case for fraudulent or deceptive practices

because each of her claims against Ocwen has been refuted by competent evidence which she has failed to counter.

Novak argues that summary judgment is improper because of such "fact questions" as whether Ocwen's conduct "violate[d] the Consumer Fraud Act" and whether the Forbearance Agreement "preclude[s] the plaintiff from bringing this action." These are not fact questions, but legal questions, and Novak has failed to establish any factual basis that would indicate she has a colorable chance of prevailing on any legal issues. The arguments and evidence presented in this case do not suggest any genuine issue of material fact, nor do they suggest any legally cognizable claims against Ocwen. Full summary judgment for Ocwen is therefore appropriate.

## IV. CONCLUSION

For the reasons stated herein, Defendant Ocwen's Motion for Summary Judgment is **granted**. All claims are dismissed with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** January 5, 2010